Good morning, Jay Geck, Deputy Solicitor General representing the State of Washington. I'd like to start by briefly summarizing the two errors, legal errors, made by the District Court that are grounds for reversal. First error is that the dissimilar treatment that's being identified by the plaintiff class here is their exclusion from the federally funded food assistance program known as SNAP. This different treatment results from Washington's compliance with the requirements of federal law, the perora law, and rational basis scrutiny applies and the equal protection claim therefore has no likelihood of success. With regards to the error on the due process claim, recipients of state food assistance do not have a due process right that can prevent a mass change that would terminate that benefit. Due process rights relate to the property interest at stake. Here, termination of the state program is not an injury to the plaintiffs that can be traced to the processes that they are complaining about which are concerned with the eligibility for federal benefits, a different property interest. Therefore, the due process claim has no likelihood of success and the injunction is particularly inequitable in light of the lack of injuries shown by the plaintiff class. Turning to the equal protection argument first, this court and the Supreme Court have both applied rational basis when states are required to apply federal eligibility laws with regards to the implementation of federal benefits. We agree with you. Wouldn't the proper remedy be to remand for analysis under rational basis? In this case, there's been no argument of a lack of a rational basis. There's been no allegation of a lack of a rational basis. And I think that that part of the injunction would be reversed because it should be vacated for based upon legal error. Whether they wish to amend their complaint to try to show a lack of a rational basis could be pursued on remand, but given that that would require the parole law itself to be irrational, I don't think there's any likelihood of success possible there. This court has applied rational basis in a very similar situation in the Sudimir case, and it applies here because the plaintiff's complaint and arguments, every time they've mentioned what they're complaining about, the elimination of the state food assistance program, the next phrase is, while continuing, the federal food assistance program. The complaint does that at ER 148, 151, ER 161. The district court recognized that comparison, but the district court did not give it effect. The state is applying the parole law when it applies the federal food assistance program, which is the only one. So in other words, there's not a challenge to the federal food assistance program, even though Washington has to fund, through state funds, some of the administrative costs of that. That is the argument that they do make, but that argument itself doesn't amount to an equal protection claim for the following reason. It's not related to the relief they seek. They don't ask that the state treat them similarly and incur some overhead with regards to a state program. They ask for the same benefit that people receive under the federal food stamp program. That's very much the relief that they sought, and that is not an equal protection problem. Moreover, if that was an equal protection problem, then every state for every federally administered program that is subject to PORRA would be in the exact same situation of incurring some administrative costs, but not incurring administrative costs on behalf of the plaintiff class excluded immigrants. Let me ask you about the notice. So now I understand there's either two or three notices, depending on how you count them, but one of which the state modified the nature of the notice following the temporary restraining order. Is that correct? That's correct. So does Ms. Pimentel have a right to appeal the fact that she might not be eligible for SNAP or her son might not be eligible? The third notice made it very clear that she would have those appeal rights. As a threshold matter, though. Administrative appeal. Administrative appeal. Yeah. She would have a right to do an administrative appeal, and that's at ER 94, the third notice. It identifies exactly who is no longer receiving the FAP benefits, why that the FAP program has been eliminated and that they're not eligible for the federal program, why, because they are of their lack of citizenship or their current immigration status, and identifies the rules. These are the sorts of due process requirements that are necessary to give someone the fair opportunity to cure any error that's been made by the state. And the remedies that the state provides are quite generous. The state will immediately do an informal review. The state will provide a formal hearing. So this would permit her, and I think she's suggested, maybe I'm reading between the lines, that she doesn't qualify, but that the son may qualify, so that it would permit an appeal to shake all that out under SNAP, correct? That's correct. And she does admit at ER 115 that she does not qualify. She does not qualify. Yes, and it's our belief that the son has not appealed the denial, so we don't know, but it's our understanding that he doesn't qualify because her eligibility is now in the procall status. But, again, that's something that could be shaked out. The important thing going to this due process argument, though, is it's not grounds to enjoin the entire termination of the state program, because the property interest that's created by state law, not by federal law, due process doesn't give the recipient any ability to avoid the termination of that state program. The legislature can terminate that program when it wishes,  I'm trying to kind of decouple these. If we agree with you on the strict scrutiny not being the appropriate standard, and in any event, since the district court didn't look at it on a rational basis, we wouldn't be doing that on appeal de novo. It would have to be vacated or dissolved and remanded. On the notice itself, the remedy, I take it, there would be, even if the injunction were dissolved, that there's still a claim potentially. I mean, I know you're appealing it, but there's a claim that the notice is defective, and you're saying that that wouldn't be a grounds for invalidating or mandating the continuation of the program. That's exactly right. The alleged denial of notice, even assuming for argument that it was inadequate, would at best mean that people who had been receiving state food benefits, that someone in that class might be the recipient of an erroneous decision by the state. The state deals with a lot of decisions, and it's possible that an error has been made. It's certainly reasonable to speculate that. But that's all the evidence that's before this court is some speculation that a mistake has been made. Now, the process that's been offered, this opportunity for a hearing, is more than adequate to satisfy due process for correcting that error. The process does not justify this mere speculation that somebody in this group might be eligible for federal SNAP benefits. It is not grounds for the extraordinary remedy here, which is to order the state program to continue. That part of the program had every right under due process law to be terminated, and that's what the Atkins case teaches from the U.S. Supreme Court. Well, one of the complaints is that if you're a recipient, you get money. It doesn't say SNAP money, FAP money, and you don't necessarily know under which regulations or pot of money your benefits are coming. Does the amended notice cure that issue? We believe so. Both the second notice that's at ER-129 and the third notice at ER-94 in particular. The third notice identifies the persons who are ineligible for SNAP. It tells the recipients why and is regarding their alien status or lack of citizenship. It identifies the rules, giving them reasonable notices to go forward, and this court has indicated in other cases that there's no obligation to actually reprint or provide a dictionary of rules in that notice. It identifies the records that the agency relied upon for SNAP ineligibility, and it makes very clear that if you disagree with our decision, you may ask to have the case reviewed, you may ask for an administrative hearing, and then it has a long page explaining how to pursue an administrative hearing. Nobody from the plaintiff class is seeking such an administrative, maybe some of them are seeking an administrative hearing, but there's certainly no incentive to do so right now because the injunction gives them continuation of the FAP benefit. What's your basis for saying that her son is not eligible? My understanding from talking to the department, this isn't in the record, is that she became what's called a qualified immigrant by virtue of a self-petition on the Violence Against Women Act, made a prima facie case that would put her into the eligible category, but she was ineligible for SNAP by virtue of not being in the country less than five years. Does the five-year apply to minors? It does not apply to minors, but the problem is that that prima facie claim, I believe, has now expired, and so at this point, she's living in the country under what would be, I understand, pro-call status, a person residing under color of law. That does not bring her son into the eligibility, but again, that's just my understanding of why he's not there. What's more important for this record and why the injunction is so inequitable is nobody shows the kind of injury that they're seeking to have enjoined here. There's a speculation that her son could be eligible for SNAP, and there's been seven months to pursue his eligibility that has not been pursued. There's nobody else in the record that shows any injury at all, and the plaintiff herself disclaims that. Why would he be pursuing an administrative remedy if he's got the injunction in force and he's getting his money? Exactly, because if the injunction is dissolved, then it would behoove him to demonstrate. Is there any statute of limitations on administrative or legal which would bar him from now claiming an administrative hearing? As I understand it, he would be reapplying or he would be seeking an administrative remedy. In any event, he could get to an administrative remedy either through appealing the notice that he received here, the third notice, or by simply applying again and seeking an administrative remedy. The 90 days mentioned in the notice has been told by the preliminary injunction? It may not have been told, but in any event, by reapplying, he could then reinstitute the same 90-day opportunity. If the injunction were dissolved, would he be entitled to benefits during the pendency of his appeal? He would not because he would be in the status of a denied applicant. If he were wrongly denied, he would be able to get back benefits, I believe, for one year under Washington law. So there is some reward, but the continuing benefit, if somebody has continuing benefits, they are in a slightly better category than somebody who's applied and been denied benefits. Given somewhat the morass of the situation, does the State have the authority, for example, on a settlement basis to not suspend his benefits pending the final denial? There may be authority at the administrative hearing, and at the administrative hearing, a person could ask for continuing benefits, and it would be up to, I believe, an ALJ to make a ruling on that. So I'd like to reserve the rest of my time. One more question. As to the statute of limitations, administrative or statutory, Washington waives that as a defense against the sun? I don't believe that we would waive it. I don't think it would be necessary to waive it because I think the sun could at any time be reapplied for SNAP benefits and immediately go into a hearing, so it's unnecessary to waive that. But it could be waived. It's just a decision I'm not prepared to make right here. Let me just, one last, we'll give you your time, but he never really got SNAP benefits, correct? That's correct. So anything that would be continued, in effect, would be these FAP benefits? That's correct. That's the nature of this injunction is because there's been no showing of SNAP eligibility, it certainly would be somewhat, I guess, ultra-virus might be the right concept, to order the State to provide SNAP benefits because that would be contrary to federal law. These people are not eligible for SNAP. All right. Good morning. May it please the Court. I'm Gregory Provenzano with Columbia Legal Services here on behalf of Monica Pimentel, the plaintiff appellee and the subclass she represents. We're here this morning to ask that you affirm the preliminary injunction that was entered by the district court. This order should be affirmed on the grounds that Ms. Pimentel is likely to succeed on both her due process and equal protection claims. As either constitutional claim, however, would support the issuance of the injunction, this court could affirm the district court by finding that she'll succeed on one of them without reaching the other at this juncture of the proceedings. I'd like to briefly discuss the standard review, turn for a few minutes to our due process argument, and then discuss equal protection. The parties agree that the standard review for a preliminary injunction is abuse of discretion. This review is limited and deferential. The court's inquiry is at an end once it ascertains whether the district court employed the correct preliminary injunction standard and correctly apprehended the law with respect to the underlying issues in the case. Where the district court has correctly applied the legal standards, the court will only reverse where the district court's application of that standard is illogical, implausible, or without support. If we were to determine that strict scrutiny as a matter of law is not the appropriate standard, that would de facto be an abuse of discretion under our case law, correct? Yes, it would, Your Honor. We don't dispute that. And so, just to make sure I understand the legal services position, if rational basis is the appropriate standard, you haven't made an argument or not suggesting that there would be a basis for continuing the injunction? I think at this juncture, if you were to decide rational basis applied, you would vacate the preliminary injunction as far as the equal protection claim goes. The case would be remanded back, and then we would have to make a decision at that point whether to move forward and to try to prove that it didn't withstand that standard review. Our complaint didn't lock us in either to strict scrutiny or rational basis review. Here, the district court employed the appropriate four-factor test set forth in Winners v. National Resources Defense Council. There's no dispute over that. And as discussed in our brief, we think she correctly grasped the law concerning both due process and equal protection, and there's no evidence that her application of those legal standards was illogical, implausible, or without support in the record. Let's turn first to the due process claim. It's important to understand what the district court did here. The district court enjoined the department from terminating Ms. Pimentel's and other class members' food assistance until they had been given adequate notice. She enjoined them from terminating their food assistance until they got adequate notice. Under the due process claim, she did not compel them to continue operating the food assistance program for illegal immigrants. The way the department has operated their food assistance program, they've operated it as if it's one program, even though they're using federal funding to provide benefits for some folks and state money for others. This is important for us to understand because she's essentially acknowledged that she's not eligible for SNAP, correct? She did a test in order to show that she had standing at the equal protection grounds, that she believed that she wasn't eligible and she only qualified for state-funded food assistance. She didn't really understand which form of assistance she was receiving until she came into our office. I understand that. I mean, she was just getting food assistance from a layman's point of view. Correct. But if she's not eligible for SNAP, I'm having a little trouble understanding why you're saying that the injunction just goes to quote food assistance and therefore don't just assume we're meaning FAP. So I'm not understanding that argument. Well, when she applied like all applicants, she filled out an application that says what food assistance. I understand all that, but why with the injunction purposes, if she's not eligible for SNAP, you're saying that the state is enjoined from terminating quote food assistance. Well, under the food assistance program, as the head of the household and as the mother, she was required to apply for food assistance for the entire household. And even if she doesn't have standing to assert her own personal injuries, she certainly has been injured by the fact that the food assistance going through her entire household is almost cut in half and has third party standing to assert the injury of her eldest son, who we do believe is eligible for federal food assistance. I think the record will show that not only did she get prima facie approval of her self-petition under the Violence Against Women's Act, but she got final approval. And because he's a minor, he is not subject to the five-year bar. But see, that's not really helping me then with the second issue, is the nature of the notice. In other words, the notice could be not defective, but it could just be wrong. In other words, maybe he's eligible, so then you have to appeal and say, I got your notice, but I totally disagree with what the state's done. And are you suggesting that a different form of notice is required beyond the, I guess what I'll call the third notice, sometimes referred to in the order in the brief. When we initially filed the case, all the order did was inform and tell other class members that the food assistance program for illegal immigrants was being terminated. It didn't tell them anything about their eligibility for federal food assistance. After we got the TRO, they did serve a third notice. Where is the duty on the state to inform a citizen or an alien of alternate sources of benefits? Well, again, the state operated the programs as if they were one, so our client and the class were applying for food assistance under both programs. When they were approved for food assistance, they weren't told whether they were getting federal or state, and were not told even though the Department of Health. My question is, Mr. Provenzano, where is the basis of an obligation on the state to inform an alien, an eligible alien or an alien, that the federal government provides a program? What's the basis of that? I mean, isn't eligibility for the federal program based on federal law? It is based on federal law. Isn't everybody at least supposed to know what the federal law is? No, the law is absolutely... Without the state telling them what the state is? Why isn't there an obligation on the federal government to tell them? The state is responsible for administrating the food assistance program, and when you apply for the federal program, the federal regulations require that they give you a decision in writing, and if they find that you're not eligible for the federal program, they're obligated both by those federal regulations and due process, and in the case law that we cite in our brief, to inform you as to why. And the problem is, by the time they got to do that after the third notice, they didn't provide the why. All they said is you don't meet the citizenship and immigration status requirements, and they cite the rule. Right. They have to do more than that. Let's go to the third notice. Tell me what's defective about the third notice. The problem with the third notice is it's conclusory. It just says you're ineligible and refers Ms. Pimentel and other class members to the rule. But the case law discussing due process, which we discussed in our brief, makes it clear that you have to summarize the regulations at a minimum, provide enough information in the notice itself within the four corners of the notice so that the applicant or recipient can determine whether or not the state made an error. Here, as the district court found, nowhere does the notice state or even attempt to explain how or why DSHS, the state, determined that plaintiff and her son were ineligible. Instead, it leaves both of them to simply guess at which of the myriad requirements of the regulations they failed to satisfy. And that's why even here today, this is the first time that we've learned that they think our client's son is ineligible because he's prurical, presently residing under color of law, because all they have is evidence of prima facie approval. We didn't know that until today. They should have told our client and other clients why they didn't qualify for federal benefits. And what that would have required them to do is to go through the regulation and tell them you don't fall within one of nine categories of immigrants who can get benefits regardless of how long you've been in this country. And then there's another four categories. If you meet one of them, you qualify as long as you've been here five years or you're a minor under age 18 or you have a certain number. What's your best case for the degree of specificity required? I think it's set forth in Ortiz v. Ekler. But there are numerous cases. There are also cases from the Seventh Circuit, Treanor v. Vargas, where the courts really have made it clear that you've got to provide enough information so that the recipient can determine from the notice whether a mistake has been made. Let me posit you another kind of alternative. If we were to disagree with you on the standard of review such that it's rational basis rather than strict scrutiny and the injunction, that injunction is dissolved, is it your view that the notice requirement would require the state to somehow continue the program even though the injunction were dissolved against the termination of the program? No, Your Honor. So what would happen there? The injunction would prevent them from terminating cash assistance until they had provided adequate notice to Ms. Pimentel and other class members. And that notice, again, would have to provide them enough information so that they could readily understand from the notice itself why they didn't meet the federal citizenship and immigration status requirements. If we were to agree with you, if they go home tonight and make up a new notice to Ms. Pimentel that says you're terminated because you don't fall in these categories of the alien age and the citizenship and your son, AHP, also we feel isn't derivative for X reason, would that satisfy their notice requirement? Well, without seeing the actual notice. I mean, I'm just asking. But that's what we've been asking them to do all along, and the district court found that their third notice didn't do that, and that's why it was inadequate. But if they did that, and if that were adequate notice. Then they'd be in a position to terminate assistance to the class. Okay. And the other thing I would point out, Your Honor, is the 90 days, in our view, would not bar a client. 90 days only runs from the time that our client is given adequate notice as required by the due process clause, and that hasn't happened at this juncture. Turning then to our equal. Let me just go back. If you have adequate notice, what's the principle for saying if the program has been terminated and the only benefits the person is receiving are FAP benefits and the third notice tells you FAP SNAP, what would be the legal basis then for continuing those? Our clients were awarded food assistance. They've been receiving food assistance, in the case of our named plaintiff, for over three years. So if the state's going to terminate their food assistance, they have to tell them why. There are really two reasons why they're proposing to terminate their assistance. First, they apparently made a determination, an individualized eligibility determination, that she and her son did not qualify for federal benefits. But they neglected to inform her of that. The second reason is that they are making a mass change. Until they provide both the individualized eligibility determination and the mass change notice, they're not in a position to terminate our client or other class member's food assistance. The fact that they made an individualized eligibility determination distinguishes this case from Atkins v. Parker, which is the mass change case that they rely upon. And the opinion there and also a footnote, which we cite in our brief, makes it absolutely clear that Atkins v. Parker did not involve individualized eligibility determinations like this case does. Well, but on the SNAP, they've told her she doesn't qualify and she can appeal. They've told her that there's this dual track and if she wants to get SNAP, she can appeal that, correct? Well, again, the case law is clear and it's cited in our brief. Simply telling applicants that they can inquire, they can ask their case manager why they were denied benefits or offering them a hearing does not satisfy due process. An integral part of due process is notice so that you can decide whether or not to ask for that hearing. And they have not been given that adequate notice. You haven't spent much time on equal protection? That's correct, Your Honor. And I guess, you know, our view is that the case law the Department relies upon takes a very narrow view of the equal protection clause. HONFAM restricts its view to the particular program in front of it, whereas under the equal protection clause, it's whether the state is responsible for treating households dissimilarly under all their laws, under their higher food assistance programs. Well, the state was giving identical benefits to both the SNAP and the FAP program, which was administrative costs and supplying also funding for FAP. If it moves the funding for FAP, it still stands ready to provide administrative costs if somebody else were to come along and fund FAP, whether it be the federal government or the Gates Foundation, right? So they stand ready to provide what they were providing before, which is simply administrative costs, half of it, not all of it. So therefore, their equal protection, they were getting equal protection. The only problem is that no funder has been found for FAP, such as the federal government or the Gates Foundation, right? Well, that's not the view of the Maryland court in Ehrlich v. Perez or in Corab. The point of the equal protection clause is not to guarantee strict equality, either in outcomes or expenditures or benefit levels. It's to prevent an invidious classification. In here, the state is clearly treating people differently because of their alienism. No, the state is not treating them differently. The federal government is treating them differently because they won't fund FAP. Well, this is where we disagree. The federal food assistance program is a voluntary program. The state of Washington was not required to participate. They chose to participate. They chose to spend state dollars to participate, and therefore they're responsible for the disparate treatment. So let me ask you, if the state has an affirmative action program that passed scrutiny, if it had certain set-asides or other programs that would benefit a suspect class, but then they decided we're in a budget crunch, so even though we have these beneficial programs that benefit suspect classes because we've decided as the state of Washington we want to support this philosophically, basically the state would be in a position of being unable, in your view, to ever end funding once they start without overcoming some kind of suspect scrutiny, strict scrutiny. Wouldn't that be the same situation as your FAP program? Well, as long as they continue to participate in the federal food assistance program, they couldn't treat our class members differently, but they've got a choice. Answer my question. Could they terminate, if they voluntarily decided to create such a program, whether it's an affirmative assistance program or something else, would they be able to terminate that? And they're not providing similar benefits to U.S. citizens? I mean, that's the linchpin, of course, of equal protection is there's dissimilar treatment. That's all we're asking for. Well, no, they've made a beneficial, they've provided a bonus, if you will, an additional benefit that's not provided to other people because of their circumstances. Well, in that case, I don't know that equal protection would apply at all. Well, but why is FAP any different? Because here the state of Washington, by voluntarily participating in the food assistance program, is responsible for the disparate treatment. The fact that Congress, through the Welfare Reform Act, has made it more expensive to assist aliens and citizens does not deprive the state of its autonomy or its choice. So the state, if they never had done anything, the moral of the story is if they had never done anything, they would never have been required to give this assistance, correct? No good deed goes unpunished. Well, we've heard that argument before. I guess the question becomes, and it's not the case here, but I think our analysis probably would suggest that strict scrutiny would apply, both the termination of a longstanding program like the state of Washington's, but as well as a refusal of any state to initiate a program to begin with. So let me just get this straight. So all the states out there that don't have voluntary FAP programs are at risk legally for not initiating such a program under your view? I think they've been at risk since the enactment of the Welfare Reform Act. And they would not be at any more risk now because you affirm the injunction than they were before. And, in fact, Congress, in other words, Congress was responsible for placing them in that predicament. And if you take a close look at the Welfare Reform Act, the findings section, you'll see that Congress is aware of what they were doing. They were aware of Graham v. Richardson, and they actually included some findings in the act that suggest that a state who followed their example will admit strict scrutiny. Of course, under our separation of powers doctrine, Congress, as any legislative body, has no authority to legislate whether somebody has passed constitutional muster. Thank you. We have your argument in mind. Thank you. Let's start where we ended with equal protection and point out that the argument about the discretion that's left to the state, that is the linchpin of the plaintiff's argument, is what this court rejected in 1985 in the Sudamir case when it said that giving a state discretion does not create an equal protection problem if what it's doing is implementing the federal law. And it's important to recognize here that the state is not saying it's received authorization from the federal government to discriminate. The state is implementing the SNAP program. That's the only program left, and as a result of that dissimilar treatment, it's the rational basis level of scrutiny applies to the Perora law. The equal protection ruling, therefore, needs to be vacated because, as written, it does chill. No state would make the irrevocable decision to opt into providing benefits to the immigrant class knowing that equal protection would compel them to never be able to eliminate that. It also needs to be reversed because Congress's intent with the SNAP program was that states could opt in, implement the SNAP programs, as all the states have, under the federal food assistance, without being compelled by equal protection to cover the excluded people. Turning to due process, we showed that the court has erred, and the court's error was that it failed to identify the due process owed for the property interest that the plaintiffs are seeking in their complaint to have enjoined. The plaintiffs are concerned with the state's termination of its program, and due process clearly shows that there is no individual recipient right to enjoin that termination of the program. They say that that's distinguishable because it was just general food assistance, and a subjective understanding by the plaintiffs, however, doesn't change the nature of the law here. The federal government didn't create the FAP program. The state government did. The state government can terminate that program, much as the federal government could terminate the SNAP program. Some official, some state official, decided that Ms. Bimentel and her son were no longer eligible. Is that correct? That they were not eligible for that. That was made at the time they applied. That was necessarily made at the time they applied for benefits in order to not erroneously put them under the federal program. What's wrong with the notice telling them why they were terminated? Nothing is wrong with the notice telling them why they were terminated because that notice explains that it meets Atkins. It tells them that the program is gone. You were receiving these benefits. So what the plaintiffs have done is to ignore the origin of their case, which was that due process prevented the termination of the state program, and switch it to, well, we didn't get very good notice back three or four years ago regarding the fact that we were ineligible for the federal program. As soon as that came to light at the beginning of this case, the state aggressively provided notice that would provide them the opportunity to come forward. The state is interested in finding people who are eligible and putting them on the federal program. But they also say, okay, let's take SNAP, and we have no idea in this myriad which category of alienage or lack of path to citizenship we fall in. So we don't even know. You give us all these regs, but we have no idea why I was rejected, as Ms. Pimentel says, or my son, because we can't tell from your notice. What is the state's response to that? I think the best answer is that it cites them to the regulation. And the regulation at first blush is complex, but at second blush for somebody who's in the United States working with their immigration status daily, it walks through the basic flow chart of the federal eligibility. That is, if you first need to be within the category of being called a qualified alien, and second, you need to have been here more than five years, and third, there are some exceptions to that. So Ms. Pimentel would be able to read the regulation and realize is she a qualified alien? She says she is under the Violence Against Women Act. Has she been here more than five years? No, she has not at the time of these events. And third, the series of exceptions, the burden is on somebody seeking an exception to say that they apply. Many of these are facially irrelevant. And that's where the burden really was of the court's injunctive order, holding the state's FAT program hostage, in essence, until further notice goes forward becomes really burdensome. There's no evidence that anybody is actually eligible. There's a speculation of a mistake. And it would require the state, I suppose, to go through that checklist and say, for example, one of the first ones is are you a Hmong refugee? Are you an Amerasian child of Vietnam era? There's a series of exceptions in there which somebody would have to come forward and correct if the state made that mistake. But the process, we think, is very good in terms of allowing people to come forward, and it's the process outlined in Exhibit ER-94. I see that my time is up. Thank you. Thank you. Thank both of you for your argument this morning. The case of Pimentel v. Dreyfus is submitted and adjourned for the morning.
judges: Hawkins, McKeown, Bea